UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEVEL 12 PRODUCTIONS, LLC,<br><br>      Plaintiff,<br><br>  v.<br><br>MEDIAITE, LLC,<br><br>      Defendant. | Case No. 1:24-cv-00006-JAV |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S RULE 56.1 STATEMENT**

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, Plaintiff Level 12 Productions, LLC ("Plaintiff") respectfully submits this response to Defendant Mediaite, LLC's ("Defendant")'s Rule 56.1 Statement in connection with its cross-motion for summary judgment:

1. Plaintiff is an entity which owns rights to video recordings and then licenses them for online and print publications. See Plaintiff's First Amended Complaint (ECF No. 16) ("FAC"), ¶ 2.

  **Plaintiff's Response**: Undisputed.

2. Mediaite is a media company that owns and operates a website at the domain name www.mediaite.com. See Plaintiff's Complaint (ECF No. 1) ("Plaintiff's Complaint"), ¶ 3.

  **Plaintiff's Response**: Undisputed.

3. Mediaite is a news website that covers the intersection between media and politics. See McLaughlin Decl., ¶ 2.

  **Plaintiff's Response**: Undisputed.

4. On April 29, 2023, Brendan Gutenschwager took and published a video ("Video

1

1") on his own X account (formerly known as Twitter, hereinafter referenced as "X") of celebrities John Legend and Chrissy Teigen walking through a protest to the White House Correspondents' Dinner in Washington D.C. See Plaintiff's Complaint, ¶ 18 & McLaughlin Decl., ¶ 11.

> **Plaintiff's Response**: Undisputed.

5. Gutenschwager's public X account is available at the general URL: https://x.com/bgonthescene. See McLaughlin Decl., ¶ 11.

> **Plaintiff's Response**: Undisputed.

6. Gutenschwager's posting of Video 1 to his public X account is still available at the URL https://x.com/BGOnTheScene/status/1652475570469437441. See McLaughlin Decl., ¶ 11.

> **Plaintiff's Response**: Undisputed.

7. Video 1 was then used in other videos posted to additional social media platforms, including the Megyn Kelly Show on Sirius XM. See McLaughlin Decl., ¶ 9.

> **Plaintiff's Response**: Disputed as "used" implies Plaintiff's work as being authorized for use on "additional social media platforms" for which Defendant's Editor-In-Chief, Aidan McLaughlin, has no personal knowledge regarding the extent to which Plaintiff's work was approved and/or authorized for use.

8. A portion of Video 1 was included as part of a video package from the YouTube account of the Megyn Kelly Show ("Megyn Kelly Video"), which Mediaite embedded in Article 1. See Plaintiff's Complaint, Ex. 2 & McLaughlin Decl., ¶ 9.

> **Plaintiff's Response**: Undisputed.

9. On May 1, 2023, Mediaite published a story reporting on Video 1 and displayed the Megyn Kelly Video (which included a portion of the underlying Video 1) on the story, available at the URL: https://www.mediaite.com/radio/i-can-see-underwear-megyn-kelly-blasts-chrissy-teigen-for-elitism-at-fake-stupid-wh-correspondents-dinner ("Article 1"). See Plaintiff's

Complaint, ¶ 33 & McLaughlin Decl., ¶ 8-9.

    **Plaintiff's Response**: Undisputed.

10. Article 1 was written by Charlie Nash. See Plaintiff's Complaint, ¶ 40.

    **Plaintiff's Response**: Undisputed.

11. Article 1 reported on Megyn Kelly's commentary on Video 1, as well as the White House Correspondents Dinner, and its attendees. See McLaughlin Decl., ¶ 9 & 14.

    **Plaintiff's Response**: Undisputed.

12. Mediaite displayed the Megyn Kelly Video (featuring Video 1) on Article 1 through the process of embedding. See McLaughlin Decl., ¶ 9.

    **Plaintiff's Response**: Undisputed.

13. Article 1 displayed the entirety of the Megyn Kelly Video as embedded from YouTube, which included just 35 seconds out of the total 59 seconds of Video 1. See McLaughlin Decl., ¶ 9 & 13.

    **Plaintiff's Response**: Undisputed.

14. The Megyn Kelly Video no longer appears on YouTube, but it still remains on TikTok, and the version on TikTok is exactly the same as the version on YouTube which was embedded into Article 1. See McLaughlin Decl., ¶ 13.

    **Plaintiff's Response**: Undisputed.

15. Mediaite displayed Video 1 as included in the Megyn Kelly Video for purposes of fair use, so that it could report on the content of the video on Article 1. McLaughlin Decl, ¶ 41.

    **Plaintiff's Response**: Disputed as Defendant's Editor-In-Chief, Aidan, McLaughlin, testified that the basis for posting Plaintiff's work was that Defendant's "legal team" told Defendant's personnel embedding content was permissible and Plaintiff's work was allegedly "a public video posted on a social

media platform that allows embedding" (*see Dkt. No. 51-3, P. 7-8*). Further, Defendant's own procedures with respect to Defendant's treatment of content under the pretense of "fair use" were not followed (*see Dkt. No. 51-4, P. 6*). No Fair use Request was made prior to the publication of the May 1, 2023, article nor was a Fair Use Memo issued by Defendant's legal department regarding same (*see Exhibit 1, Def. Responses to Plaintiff's Second Set Interrogatory Nos. 4, 5*), and Defendant's stated reason for posting Plaintiff's work was for purposes of "news reporting" (*see Def. Response to Plaintiff's Second Set Interrogatory No. 8).*

16. Mediaite did not request a license from Plaintiff for Video 1. FAC, ¶ 35.

   **Plaintiff's Response**: Undisputed.

17. On August 27, 2023, Brendan Gutenschwager took and published a video ("Video 2") of a protest that occurred outside Gracie Mansion in New York City. FAC, ¶ 14.

   **Plaintiff's Response**: Undisputed.

18. Brendan Gutenschwager recorded Video 2 and posted Video to his public X account https://x.com/bgonthescene. See McLaughlin Decl, ¶ 11.

   **Plaintiff's Response**: Undisputed.

19. Video 2 was posted by Gutenschwager on his own personal X account at the specific URL https://x.com/BGOnTheScene/status/1695869255403597868 and is still currently available at such URL. See McLaughlin Decl, ¶ 17.

   **Plaintiff's Response**: Undisputed.

20. Video 2 was then re-posted on numerous additional social media platforms, including the public X account @EndWokeness, as well as accounts @ThePatriotOnes and @HeadlineRoundup. See McLaughlin Decl., ¶ 18.

   **Plaintiff's Response**: Disputed as "re-posted" implies Plaintiff's work as being

authorized for use on "additional social media platforms" for which Defendant's Editor-In-Chief, Aidan McLaughlin, has no personal knowledge regarding the extent to which Plaintiff's work was approved and/or authorized for use.

21. On August 27, 2023, Mediaite published a story reporting on Video 2 and displayed Video 2 on the story, available at the URL: https://www.mediaite.com/news/move-back-massive-brawl-breaks-out-at-curtis-sliwas-anti-immigration-rally-in-new-york-city/ ("Article 2"). FAC, ¶ 31.

**Plaintiff's Response**: Disputed in that the foregoing article is no longer available at the cited URL link.

22. Mediaite displayed Video 2 on Article 2 through the process of embedding. See McLaughlin Decl., ¶ 18 & 19.

**Plaintiff's Response**: Undisputed.

23. Mediaite embedded Video 2 from the public X account @EndWokeness and included that embed in its original form on Article 2. See McLaughlin Decl., ¶ 18 & 19.

**Plaintiff's Response**: Undisputed.

24. Mediaite displayed Video 2 for purposes of fair use, so that it could report on the content of the video on Article 2. See McLaughlin Decl, ¶ 41.

**Plaintiff's Response**: Disputed as Defendant's Editor-In-Chief, Aidan, McLaughlin, testified that the basis for posting Plaintiff's work was that Defendant's "legal team" told Defendant's personnel embedding content was permissible and that Plaintiff's work was allegedly "a public video posted on a social media platform that allows embedding" (*see Dkt. No. 51-3, P. 7-8*). Further, Defendant's own procedures with respect to Defendant's treatment of content under the guise of "fair use" were not followed (*see Dkt. No. 51-4, P. 6*). No Fair use

5

Request was made prior to the publication of the May 1, 2023, article nor was a Fair Use Memo issued by Defendant's legal department (*see Exhibit 1, Def. Responses to Plaintiff's Second Set Interrogatory Nos. 4, 5*), and Defendant's stated reason for posting Plaintiff's work was for purposes of "news reporting" (*see Def. Response to Plaintiff's Second Set Interrogatory No. 8*).

25. Mediaite did not request a license from Plaintiff for Video 2. FAC, ¶ 35.

   **Plaintiff's Response**: Undisputed.

26. Article 2 was written by Phillip Nieto. FAC, ¶ 40.

   **Plaintiff's Response**: Undisputed.

27. Article 2 reported on the rally depicted in Video 2, as well as Curtis Sliwa's comments at the rally, and his alleged prior arrests. See McLaughlin Decl, ¶ 21.

   **Plaintiff's Response**: Undisputed

28. Article 2 displayed the entirety of Video 2 as embedded from the X account @EndWokeness. See McLaughlin Decl, ¶ 18 & 19.

   **Plaintiff's Response**: Undisputed.

29. Ultimately, Article 1 did not generate much interest or revenue, receiving only about 11,514 views and an estimated $80.60, resulting to nominal advertising revenue for the article. See Vulaj Decl ¶ 5, Ex. A-2.

   **Plaintiff's Response**: Disputed with respect to Defendant's description of the performance of Article 1 such that it "did not generate much interest" and resulted in "nominal advertising revenue" which are no more then self-serving descriptions asserted by Defendant and its counsel.

30. Ultimately, Article 2 did not generate a hugely significant amount of interest or revenue, receiving only about 46,746 views and an estimated $327.00, resulting to nominal

advertising revenue for the article. See Vulaj Decl ¶ 5, Ex. A-2.

>**Plaintiff's Response**: Disputed with respect to Defendant's descriptions of the performance of Article 2 such that it did not generate "a hugely significant amount of interest" and resulted in "nominal advertising revenue" which are no more then self-serving descriptions asserted by Defendant and its counsel.

31. Neither Video 1 or Video 2 were hosted on or downloaded to Mediaite's servers. See McLaughlin Decl, ¶ 57.

>**Plaintiff's Response**: Undisputed.

32. Plaintiff filed this action on January 2, 2024. See Plaintiff's Complaint, generally.

>**Plaintiff's Response**: Undisputed.

33. Video 1 was deleted from Article 1 in January 2024. See McLaughlin Decl., ¶ 12.

>**Plaintiff's Response**: Undisputed.

34. Video 2 was deleted from Article 2 in January 2024. See McLaughlin Decl., ¶ 12.

>**Plaintiff's Response**: Undisputed.

35. Defendant moved to dismiss Plaintiff's Complaint on February 12, 2024. ECF Doc. No. 12-13.

>**Plaintiff's Response**: Undisputed.

36. Plaintiff amended his complaint on March 4, 2024. ECF Doc. No. 16.

>**Plaintiff's Response**: Undisputed.

37. Defendant moved to dismiss Plaintiff's Amended Complaint on March 22, 2024, in which it asserted numerous affirmative defenses including non-actionable infringement by way of embedding, fair use, and ability to re-post content by way of the Terms of Service of YouTube and X. ECF Doc. No. 20-22.

>**Plaintiff's Response**: Undisputed.

38. The Court deemed Defendant's Motion to Dismiss Plaintiff's Amended Complaint moot on September 18, 2024. ECF Doc. No. 33.

**Plaintiff's Response**: Undisputed.

39. After a Case Management Conference held on September 18, 2024 (ECF Doc. No. 31), Plaintiff and Defendant agreed to propose a briefing schedule for both parties' summary judgment motions. ECF Doc. No. 34.

**Plaintiff's Response**: Undisputed.

40. On November 11, 2024, the Parties requested a two-week extension of the briefing schedule (ECF Doc. No. 39), which this Court granted (ECF Doc. No. 40).

**Plaintiff's Response**: Undisputed.

Dated: January 6, 2024

**SANDERS LAW GROUP**

By: */s/ Joshua D. Vera*
Joshua D. Vera, Esq.
Craig B. Sanders, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, NY
Tel: (516) 203-7600
Email: jvera@sanderslaw.group
Email: csanders@sanderslaw.group
*Attorneys for Plaintiff*